IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JEFFERSON COUNTY DRAINAGE )
DISTRICT NUMBER SEVEN, )
a political subdivision of the )
State of Texas, )
 )
     Plaintiff, )
 )
     v. )     Civil Action No. 1:11-cv-00461
 )
ERIC H. HOLDER, JR., )     (three-judge court) DST-RWR-RJL
Attorney General of the )
United States of America; )
THOMAS E. PEREZ, )
Assistant Attorney General, )
Civil Rights Division, United States )
Department of Justice, )
 )
     Defendants. )
_____ )

## CONSENT JUDGMENT AND DECREE

1.     This action was initiated on March 2, 2011 by Plaintiff Jefferson County Drainage

District Number Seven (the District), against Defendants Eric H. Holder, Jr., Attorney General of

the United States, and Thomas E. Perez, Assistant Attorney General, Civil Rights Division

(collectively,"the Attorney General"). The District is a governmental entity organized under the

constitution and laws of the State of Texas.

2.     The State of Texas became covered as a whole by certain special provisions of the

Voting Rights Act, based on a coverage determination under the third sentence of Section 4(b),

"the language minority trigger," made by the Attorney General and the Director of the Census,

and published in the Federal Register on September 23, 1975. *See* 40 Fed. Reg. 43,746 (Sept.

23, 1975). As of November 1972, over 5 percent of the State's voting-age citizens were Latinos,

its election materials were in English only, and fewer than 50 percent of all of its voting-age citizens were registered to vote or turned out to vote. By virtue of this coverage determination, the State of Texas and all of its political subunits (including the District) must receive preclearance under Section 5 of the Voting Rights Act for all changes enacted or implemented after November 1, 1972, that affect voting. *See Briscoe* v. *Bell*, 432 U.S. 404 (1977).

3. This three-judge Court has been convened as provided in 42 U.S.C. § 1973b(a)(5) and 28 U.S.C. § 2284 and has jurisdiction over this matter.

4. Section 4(a) of the Voting Rights Act provides that a state or political subdivision subject to the special provisions of the Act may be exempted or "bailed out" from those provisions, through an action for a declaratory judgment before this Court, if it can demonstrate fulfillment of the specific statutory conditions in Section 4(a), for the time period "during the ten years preceding the filing of the action" and "during the pendency of such action," as described below:

> no such test or device has been used within such State or political subdivision for the purpose or with the effect of denying or abridging the right to vote on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section (42 U.S.C. § 1973b(a)(1)(A));

> no final judgment of any court of the United States, other than the denial of declaratory judgment under this section, has determined that denials or abridgements of the right to vote on account of race or color have occurred anywhere in the territory of such State or political subdivision or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) that denials or abridgements of the right to vote in contravention of the guarantees of subsection (f)(2) of this section

2

have occurred anywhere in the territory of such State or subdivision and no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds; and no declaratory judgment under this section shall be entered during the pendency of an action commenced before the filing of an action under this section and alleging such denials or abridgements of the right to vote (42 U.S.C. § 1973b(a)(1)(B));

no Federal examiners or observers under subchapters I-A to I-C of this chapter have been assigned to such State or political subdivision (42 U.S.C. § 1973b(a)(1)(C));

such State or political subdivision and all governmental units within its territory have complied with section 1973c of this title, including compliance with the requirement that no change covered by section 1973c of this title has been enforced without preclearance under section 1973c of this title, and have repealed all changes covered by section 1973c of this title to which the Attorney General has successfully objected or as to which the United States District Court for the District of Columbia has denied a declaratory judgment (42 U.S.C. § 1973b(a)(1)(D));

the Attorney General has not interposed any objection (that has not been overturned by a final judgment of a court) and no declaratory judgment has been denied under section 1973c of this title, with respect to any submission by or on behalf of the plaintiff or any governmental unit within its territory under section 1973c of this title, and no such submissions or declaratory judgment actions are pending (42 U.S.C. § 1973b(a)(1)(E)); and

such State or political subdivision and all governmental units within its territory - (i) have eliminated voting procedures and methods of election which inhibit or dilute equal access to the electoral process; (ii) have engaged in constructive efforts to eliminate intimidation and harassment of persons exercising rights protected under subchapters I-A to I-C of this chapter; and (iii) have engaged in other constructive efforts, such as expanded opportunity for convenient registration and voting for every person of voting age and the appointment of minority persons as election officials throughout the jurisdiction and at all stages of the election and registration process (42 U.S.C. § 1973b(a)(1)(F)(i-iii)).

5.    Section 4(a) provides the following additional requirements to obtain bailout:

> To assist the court in determining whether to issue a declaratory judgment under this subsection, the plaintiff shall present evidence of minority participation, including evidence of the levels of minority group registration and voting, changes in such levels over time, and disparities between minority-group and non-minority-group participation. (42 U.S.C. § 1973b(a)(2));

> No declaratory judgment shall issue under this subsection with respect to such State or political subdivision if such plaintiff and governmental units within its territory have, during the period beginning ten years before the date the judgment is issued, engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color or (in the case of a State or subdivision seeking a declaratory judgment under the second sentence of this subsection) in contravention of the guarantees of subsection (f)(2) of this section unless the plaintiff establishes that any such violations were trivial, were promptly corrected, and were not repeated. (42 U.S.C. § 1973b(a)(3));

> The State or political subdivision bringing such action shall publicize the intended commencement and any proposed settlement of such action in the media serving such State or political subdivision and in appropriate United States post offices . . . . (42 U.S.C. § 1973b(a)(4)).

6.    Section 4(a)(9) provides that the Attorney General can consent to entry of a declaratory judgment granting bailout "if based upon a showing of objective and compelling evidence by the plaintiff, and upon investigation, he is satisfied that the State or political subdivision has complied with the requirements of [Section 4(a)(1)] . . . ." (42 U.S.C. § 1973b(a)(9)).

7.    The Defendant Attorney General of the United States, after investigation, has agreed that the Plaintiff Jefferson County Drainage District Number Seven has fulfilled all conditions required by Section 4(a) and is entitled to the requested declaratory judgment. The parties have filed a Joint Motion for Entry of this Consent Judgment and Decree.

### AGREED STIPULATION OF FACTUAL FINDINGS

8.    The District is a political subdivision of the State of Texas and thus a political subdivision of a state within the meaning of Section 4(a) of the Voting Rights Act. *See* 42 U.S.C. § 1973b(a)(1)(A); *see also Northwest Austin Mun. Util. Dist. No. One* v. *Holder*, 129 S. Ct. 2504, 557 U.S. ___ (2009).

9.    The District is located entirely within the boundaries of Jefferson County, Texas. The District is one of three drainage districts located in Jefferson County. It was initially established under the provisions of Section 59 of Article XVI of the Constitution of Texas by Sections 3, 4, and 13 of Senate Bill 53, Chapter 34, Acts of the 57th Legislature, 3rd Called Session, 1962 (Senate Bill 53), to maintain levees, drainage canals, and pumping stations within its boundaries. Today, the District covers the needs for drainage and hurricane protection for 107.5 square miles of Jefferson County, including the entirety of the communities of the City of Port Arthur, the City of Port Neches, the City of Nederland, and the City of Groves.

10.    Jefferson County, Texas had a total population of 252,051 persons, according to the 2000 Census, and the racial makeup of the county's total population was 130,604 (51.8%) Non-Hispanic white, 84,482 (33.5%) Non-Hispanic black, and 26,536 (10.5%) Hispanic. The total voting age population of Jefferson County in 2000 was 186,727, and the racial makeup of

the County's voting age population was 103,646 (55.5%) Non-Hispanic white, 58,271 (31.2%) Non-Hispanic black, and 17,908 (9.6%) Hispanic. The total estimated citizen voting age population of Jefferson County in 2000 was 178,631, and the racial makeup of the citizen voting age population was 103,177 (57.8%) Non-Hispanic white, 57,936 (32.4%) Non-Hispanic black, and 12,417 (7.0%) Hispanic.

The 2006-2008 American Community Survey (ACS) Census data estimates the total population of Jefferson County to have dropped to 242,142 persons, with a racial makeup of 116,388 (48.1%) Non-Hispanic white, 83,025 (33.5%) Non-Hispanic black, and 33,351 (13.8%) Hispanic. The 2006-2008 ACS estimates the voting age population of the County at 183,104, with a racial make-up of 94,340 (51.5%) Non-Hispanic white, 60,144 (32.8%) Non-Hispanic black, and 22,264 (12.2%) Hispanic. The 2006-2008 ACS estimates the citizen voting age population of the County at 170,651, with a racial make-up of 93,708 (54.9%) Non-Hispanic white, 59,868 (35.1%) Non-Hispanic black, and 12,691 (7.4%) Hispanic.

The total population of the District, according to the 2000 Census, was approximately 121,922 persons, with a racial makeup of 67,934 (55.7%) Non-Hispanic white, 31,553 (25.9%) Non-Hispanic black, and 16,752 (13.7%) Hispanic. The voting age population of the District, according to the 2000 Census, was approximately 92,035 persons, with a racial makeup of 53,744 (58.4%) Non-Hispanic white, 22,939 (24.9%) Non-Hispanic black, and 11,619 (12.6%) Hispanic. The estimated citizen voting age population of the District was 82,774 in 2000, with an estimated racial makeup of 52,466 (63.4%) Non-Hispanic white, 21,171 (25.6%) Non-Hispanic black, and 6,436 (7.8%) Hispanic.

Based on the 2006-2008 ACS data, the parties estimate the total population of the District to be 119,272, with an estimated racial make-up of 60,039 (50.3%) Non-Hispanic white, 32,587 (27.3%) Non-Hispanic black, and 21,618 (18.1%) Hispanic. Based on the 2006-2008 ACS data, the parties estimate that the voting age population of the District declined to 90,191 persons, with a racial makeup of 48,665 (54.0%) Non-Hispanic white, 23,606 (26.2%) Non-Hispanic black, and 14,432 (16.0%) Hispanic. Based on the 2006-2008 ACS data, the parties estimate that citizen voting age population of the District has dropped to 79,079, with an estimated racial makeup of 47,651 (60.3%) Non-Hispanic white, 21,875 (27.7%) Non-Hispanic black, and 6,578 (8.3%) Hispanic.

11.     Governing state law, including the Texas Election Code, the Texas Water Code, and House Bill 3847, Chapter 1151, Acts of the 76th Legislature, 1999 (House Bill 3847) (amending Senate Bill 53) provide for the method of election of the District's commissioners. *See* Tex. Elec. Code Ann. § 1.002; *see also* Tex. Water Code Ann. § 49.101. Under Senate Bill 53 (1962), the original legislation creating the District, the governing body of the District consisted of three commissioners appointed by the County governing body, the Jefferson County Commissioner's Court. By a petition of at least 20 percent of the real property taxpayers of the District, under House Bill 1180, Chapter 614, Acts of the 65th Legislature, 1977 (House Bill 1180) (amending Senate Bill 53) and the provisions of Section 56.064 of the Texas Water Code, the method of choosing commissioners was changed from appointment to election.

The first commissioner election was held in January 1982. The second election was held in November 1982 to coordinate the District's election timetable with similar agencies. Subsequent elections were held in April 1985, January 1989, January 1993, and January 1997.

The District's elections currently take place in May on a uniform election date established by state law at the same time as other local elections in Jefferson County. *See* Tex. Water Code Ann. § 49.103(b). Elections scheduled for May 2002 and May 2006 were canceled because the entire board ran unopposed. *See id.* at § 2.053. The District's last contested election occurred on May 8, 2010.

12.     The District is currently governed by a board of five commissioners with one commissioner serving as its chairman. *See* Tex. Water Code Ann. § 54.101. These commissioners serve concurrent four-year terms and all seats for the board are up for election each election cycle in even-numbered non-presidential election years. *See* Tex. Water Code Ann. § 49.103(a); *see also* House Bill 3847, section 4. As required by state law, elections for commissioner are non-partisan. *See* Tex. Elec. Code Ann. §§ 1.005(9), 144.001, 144.002. To be elected as a commissioner, a plurality-vote is required. *See id.* at § 2.001. Thus, candidates with the highest numbers of votes for each available position are elected regardless of whether the candidate receives a majority of the votes cast.

The District's Board of Commissioners has authority to determine the method of election whether at-large or through single member districts. *See* Tex. Water Code Ann. § 49.103(c), (d). The District currently employs at-large elections with residency districts. Under this system, candidates must run from the particular municipality they live in and all voters in the District vote for five commission members, but only one commissioner is elected from each of the geographic municipalities represented in the District. *See* House Bill No. 3847 ("Not more than one Commissioner shall be elected from any one municipality as long as five municipalities exist within the [D]istrict.")

8

The District recently adopted a resolution modifying the municipalities represented by its five commission members to reflect changes over time in the geographic composition of the municipalities in the District. *See* Dist. No. 7, Res. No. 341 (Feb. 2, 2010). The District previously elected a total of five commissioners with no more than one commissioner being elected from each of the geographical areas of the Cities of Groves, Nederland, Port Neches, Port Arthur, and Griffing Park. On February 2, 2010, the District's Board of Commissioners, through a resolution, authorized a change to the geographical areas of election, with one commissioner each being elected from Nederland, Port Neches and Groves, and with two commissioners being elected from Port Arthur, inclusive of the area formerly identified as Griffing Park. This resolution was submitted to the Department of Justice for review under Section 5, and, on May 4, 2010 the Attorney General informed district officials that no objection would be interposed. (Submission numbers 2010-1723 and 2010-1670.)

13.     African Americans have held several prominent positions in the governance of the District. One African American from Port Arthur was appointed and served on the Board from March 1975 to January 1982. Another African American candidate was elected to the District's Board of Commissioners in 1993 to represent Port Arthur and he has served continuously to the present time, having just been reelected to the board in May 2010; he is the current chair of the Board and has served in that capacity since 1997. The May 2010 election also resulted in an additional African American candidate being elected to the Board to represent Port Arthur— receiving the most votes of any candidate running for a contested seat. Hence, at present, two of the five commissioners on the District's Board of Commissioners are African-American.

14.     Voting registration is not conducted under the supervision of the District.  Instead, since state law provides that registration for voting is conducted by Texas's 254 counties, Jefferson County's Tax Assessor-Collector serves as the Voter Registrar for Jefferson County and provides voter registration information for the District.  *See* Tex. Elec. Code Ann. § 12.001. Texas uses a unitary voter registration system under which a citizen need only register once in order to be able to vote in elections for federal, state, county, and municipal offices, as well as for special district offices, such as the District.  The determination of which eligible voters can vote in the District's elections has historically been established on the basis of whether a voter is subject to the District's taxing authority.  The District utilizes a voter registration list generated by Jefferson County, and there are various opportunities for convenient voter registration in the County.  *See id.* at §§ 11.001-11.002.  As of 2008, there were an estimated total of 66,422 registered voters within the District.  As of May 2010, there were 67,858 registered voters within the District.

The District is unable to present evidence directly measuring minority voter participation rates over time because the District does not engage in voter registration, and while Jefferson County does maintain voter registration records for the District, it does not record the race of its registered voters.  Data suggest that voter registration rates in the precincts comprising the District have generally decreased over time along with its decreasing population, and that the overall voter registration rate remains at about 84 percent of the citizen voting age population being registered to vote in the District.  In addition, available data covering recent years from the Texas Secretary of State suggest that there have been increases in the precincts comprising the District over time in the total number of Hispanic-surnamed registered voters.  Voter turnout has varied in the

county by the type of election being conducted, with turnout being the highest for November presidential elections and generally much lower for the District's May elections.

15.     At present, the District's elections are conducted independent of elections for County offices and independent of elections for other local offices. The District, however, contracted with Jefferson County's Elections Director to work as an independent contractor assisting the District with conducting its most recent election in May 2010. Additionally, the District utilizes election contact information provided by Jefferson County to find staff, such as poll workers and election judges, for its elections. The District also uses the same polling places used by the community for County and other municipal elections. This allows voters to avoid traveling to a separate polling place on Election Day to vote in the District's elections. Voters are also permitted to vote early in the District's elections at the District's administrative offices.

16.     In 1981, at the time the District shifted its method of selecting its commissioners from appointment to election, the District developed a plan for compliance with the language minority requirements of Sections 4(f)(4) of the Voting Rights Act and received preclearance under Section 5 from the Department of Justice for that plan. Submission number 1981-0685. The District has complied with the minority language requirements of the Act by publishing, in both English and Spanish, notices of election, orders of election, and other relevant orders and resolutions establishing the election of commissioners, the election date, selection of election judges, and other related election issues, including its ballot. In addition, bilingual assistance has been made available for Spanish-speaking voters through the District's administrative offices during the early voting process and on election days.

11

17.    Jefferson County was certified by the Attorney General for federal examiners (and federal observers) on December 10, 1996. *See* 61 Fed. Reg. 65,074-04 (Dec. 10, 1996). However, no federal examiners or observers have been assigned to the District's elections nor to any elections conducted in the County at the same time as the District's elections.

18.    Over the course of its history, the District has made five submissions under Section 5 of the Voting Rights Act to the Attorney General, with the first occurring in 1982. The Attorney General has not interposed an objection to any of these submissions. Of these submissions, two were submitted by the District in the ten years preceding this action. In the ten years preceding this action, and during the pendency of this action, there have been two minor voting changes enforced with respect to the District's elections requiring preclearance under Section 5 that were not precleared prior to implementation; namely, the District's decision to cancel elections in 2002 and 2006, when no candidates running for the office of District Commissioner were opposed. The District subsequently obtained preclearance for these voting changes. (Submission numbers 2010-1723 and 2010-1670.) The parties note their understanding that the State of Texas had at one time advised local subjurisdictions that these types of election cancellations did not require preclearance under Section 5.

19.    The District publicized the intended commencement of this action in the manner required by Section 4(a)(4) prior to its being filed by placing advertisements in local newspapers, in the appropriate post office, and in the Jefferson County Sub-Courthouse, and by conducting a public hearing on the matter. The District has publicized notice of this proposed settlement, simultaneously with the filing of the Joint Motion for Entry of Consent Judgment and Decree, as required by Section 4(a)(4). The parties request that this Court wait 30 days after filing of the

Joint Motion for Entry of this Consent Judgment and Decree, before approving this settlement, while this notice of proposed settlement is advertised.

20.     Allowing bailout by the District is appropriate, notwithstanding the enforcement of certain minor voting changes prior to Section 5 preclearance. This consent is premised on an understanding that Congress intended Section 4(a)(9) to permit bailout in those cases where the Attorney General is satisfied that the statutory objectives of encouraging Section 5 compliance, and preventing the use of racially discriminatory voting practices, would not be compromised by such consent. The United States' consent also is premised on the fact that the voting changes concerning cancelled elections enforced without Section 5 preclearance were minor in nature, were submitted promptly once brought to Plaintiff's attention, the changes were not discriminatory in purpose or effect, and the absence of any indication that the failure to submit those changes was intended to evade a Section 5 objection. This Court has granted bailout to other jurisdictions who have similarly implemented certain minor voting changes prior to Section 5 review. *See e.g., Augusta County* v. *Gonzales*, No. 05-1885 (D.D.C. Nov. 30, 2005).

21.     The United States has determined that it is appropriate to consent to a declaratory judgment allowing bailout by the District, pursuant to Section 4(a)(9) of the Voting Rights Act. The United States' consent in this action is based upon its own independent factual investigation of the District's fulfillment of all of the bailout criteria, and consideration of all of the circumstances of this case, including the views of minority citizens in the District, and the absence of racial discrimination in the electoral process within the District.

## AGREED FINDINGS ON STATUTORY BAILOUT CRITERIA

22.     The District is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act, 42 U.S.C. § 1973c. Under Section 5 of the Act, the District is required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices, and procedures adopted or implemented since the Act's coverage date for the State of Texas.

The only entity seeking bailout through this action is the District. Neither Jefferson County nor any of the other political subdivisions in the County are seeking bailout, other than the District. The District is a political subdivision entitled to seek bailout from this Court for itself and by itself under Section 4(a). *See Northwest Austin Mun. Util. Dist. No. One*, 129 S. Ct. at 2516 ("We therefore hold that all political subdivisions . . . are eligible to file a bailout suit").

The District is one of the smallest kinds of governmental units in Texas. While its boundaries embrace certain other governmental units in Jefferson County, there are no other governmental units within its territory for which it is responsible or which must request bailout at the same time as the District, within the meaning of Section 4(a), 42 U.S.C. § 1973b(a).

23.     During the ten years preceding the filing of this action and during the pendency of this action, there has been no test or device as defined in Sections 4(c) and 4(f)(3) of the Voting Rights Act used within the District for the purpose or with the effect of denying or abridging the right to vote on account of race or color or in contravention of the guarantees of Section 4(f)(2). 42 U.S.C. § 1973b(a)(1)(A).

24.     During the ten years preceding the filing of this action, and during the pendency of this action, no final judgment of any court of the United States has determined that denials or

14

abridgements of the right to vote on account of race or color or in contravention of the guarantees of Section 4(f)(2) have occurred anywhere in the territory of the District. Further, no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds. No action is presently pending alleging such denials or abridgements of the right to vote. 42 U.S.C. § 1973b(a)(1)(B).

25. During the ten years preceding the filing of this action, and during the pendency of this action, no Federal examiners or observers have been assigned to the District. 42 U.S.C. § 1973b(a)(1)(C).

26. The District has submitted a number of voting changes for review under Section 5 since it became an elected body. During the ten years preceding the filing of this action, the District has enforced two voting changes prior to preclearance under Section 5. These two minor changes concerned the cancellation of elections -the District's elections in May 2002 and May 2006 – in which all of the candidates for District commissioner ran unopposed. These voting changes have since been submitted to the Attorney General under Section 5 and precleared. 42 U.S.C. § 1973b(a)(1)(D).

27. During the ten years preceding the filing of this action, and during the pendency of this action, there has been no need for the District to repeal any voting changes to which the Attorney General has objected, or to which this Court has denied a declaratory judgment, since no such objection or denials have occurred. 42 U.S.C. § 1973b(a)(1)(D).

28. The Attorney General has never interposed any objection to voting changes submitted by or on behalf of the District for administrative review under Section 5. No such administrative submissions by or on behalf of the District are presently pending before the

15

Attorney General. The District has never sought judicial preclearance from this Court under Section 5. Thus, this Court has never denied the District a declaratory judgment under Section 5, nor are any such declaratory judgment actions now pending. 42 U.S.C. § 1973b(a)(1)(E).

29.     During the ten years preceding the filing of this action, and during the pendency of this action, the District has not employed voting procedures or methods of election which inhibit or dilute equal access to the electoral process. 42 U.S.C. § 1973b(a)(1)(F)(i). African-American candidates have been elected to the District's Board of Commissioners on several occasions. During its most recent election, two African American candidates won election to the District's five member Board of Commissioners.

30.     During the ten years preceding the filing of this action, and during the pendency of this action, no one in the District's elections has been subject to intimidation or harassment in the course of exercising their right to participate in the political process. The District has engaged in constructive efforts to eliminate intimidation and harassment of persons exercising rights protected under the Voting Rights Act through the District's numerous election-related contacts and coordination of election activities with Jefferson County. 42 U.S.C. § 1973b(a)(1)(F)(ii).

31.     During the ten years preceding the filing of this action, and during the pendency of this action, the District has engaged in other constructive efforts to expand the opportunity for voting for every person of voting age through the District's numerous election-related contacts and coordination of election activities with Jefferson County. Voters in the District's elections vote in centrally-located facilities also utilized by the County for voting, are allowed to participate in early voting, and also benefit from the County's minority language election procedures and the County's efforts to recruit a diverse pool of poll officials. Potential candidates for District

Commissioner are provided with election-related information from the District upon request and are easily able to obtain access to the ballot. Further, the District utilizes a registration list generated by the County, and there are various opportunities for convenient voter registration in Jefferson County. Additionally, the District has contracted with Jefferson County's Elections Director to help conduct its elections, further facilitating the process of voting in the District. 42 U.S.C. § 1973b(a)(1)(F)(iii).

32. The District is unable to present evidence directly measuring minority voter participation rates over time because the District does not engage in voter registration, and while Jefferson County does maintain voter registration records for the District, it does not record the race of its registered voters. The District had its last contested election in May 2010 and before that had not had a contested election since 1997. During its most recent contested election, two African American candidates won election to the District's five member Board of Commissioners. 42 U.S.C. § 1973b(a)(2).

33. During the preceding ten year period, the District has not engaged in violations of any provision of the Constitution or laws of the United States or any State or political subdivision with respect to discrimination in voting on account of race or color or in contravention of the guarantees of Section 4(f)(2). 42 U.S.C. § 1973b(a)(3).

34. The District publicized the intended commencement of this action in the manner required by Section 4(a)(4) of the Act, prior to its being filed, by placing advertisements in local newspapers, in the appropriate post office and in the Jefferson County Sub-Courthouse, and by conducting a public hearing on the matter. The District has publicized a notice of the proposed

17

settlement of this action, simultaneously with the filing of the Joint Motion for Entry of Consent Judgment and Decree, as required by Section 4(a)(4). 42 U.S.C. § 1973b(a)(4).

Accordingly, it is hereby ORDERED, ADJUDGED and DECREED:

1. The Plaintiff, Jefferson County Drainage District Number Seven, is entitled to a declaratory judgment in accordance with the second sentence of Section 4(a)(1) of the Voting Rights Act, 42 U.S.C. § 1973b(a)(1).

2. The parties' Joint Motion for Entry of Consent Judgment and Decree is GRANTED, and the Plaintiff Jefferson County Drainage District Number Seven is exempted from coverage pursuant to the third sentence of Section 4(b) of the Voting Rights Act, 42 U.S.C. § 1973b(b), provided that this Court shall retain jurisdiction over this matter for a period of ten years pursuant to Section 4(a)(5), 42 U.S.C. § 1973b(a)(5). This action shall be closed and placed on this Court's inactive docket, subject to being reactivated upon application by either the Attorney General or any aggrieved person in accordance with the procedures set forth in Section 4(a)(5), 42 U.S.C. § 1973b(a)(5).

3. Each party shall bear its own costs.

Entered this __3rd__ day of __June__, 2011.

_____

HONORABLE DAVID S. TATEL
UNITED STATES CIRCUIT JUDGE


_____

HONORABLE RICHARD W. ROBERTS
UNITED STATES DISTRICT JUDGE


_____

HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT JUDGE

Approved as to form and content:

**For the Plaintiff**
**JEFFERSON COUNTY DRAINAGE**
**DISTRICT NUMBER SEVEN:**

*/s/ J. Gerald Hebert by BFH as authorized*

**J. GERALD HEBERT**
D.C. Bar No. 447676
Attorney at Law
191 Somervelle Street, #405
Alexandria, Va. 22304
Tel (703) 628-4673
Email: hebert@voterlaw.com
Email: jghebert@comcast.net

**DAVID RICHARDS**
Texas State Bar No. 16846000
Richards, Rodriguez & Skeith, **LLP**
816 Congress Avenue, Suite 1200
Austin, Texas 78701
Tel (512) 476-0005
Fax (512) 476-1513
Email: davidrichards@rrsfilID.com

Dated: April 20, 2011

For the Defendant **ATTORNEY GENERAL OF THE UNITED STATES:**

**RONALD C. MACHEN JR.**
United States Attorney
District of Columbia

**THOMAS E. PEREZ**
Assistant Attorney General
Civil Rights Division

*/s/ Brian F. Heffernan*

_____

**T. CHRISTIAN HERREN, JR.**
**BRIAN F. HEFFERNAN**
brian.f.heffernan@usdoj.gov
Attorneys
Voting Section
Civil Rights Division
United States Department of Justice
Room 7254 - NWB
950 Pennsylvania Ave., N.W.
Washington, DC 20530
Phone: (202) 514-4755
Fax:    (202) 307-3961

Dated: April 20, 2011